## S11A0848. NATIONS v. THE STATE.
### (717 SE2d 634)

HINES, Justice.

David William Nations appeals his convictions for malice murder and aggravated battery in connection with the fatal shooting of Jason Cothren and the wounding of Claude Cothren. He maintains that he was denied due process of law because his convictions were obtained by the use of perjured testimony which was not timely disclosed by the State and because his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On January 3, 2007, Jason Cothren ("Jason"), his father Claude Cothren ("Claude"), Jason's uncle Clifton Cothren ("Clifton"), Claude's girlfriend Kathy Tanner ("Tanner"), and David Nations ("Nations") were living together in a mobile home in Towns County. Jason, Claude, and Clifton had been drinking all that day at

---

[1] The crimes occurred on January 3, 2007. On February 23, 2007, a Towns County grand jury returned a five-count indictment against Nations: Count 1 – the malice murder of Jason Cothren; Count 2 – the felony murder of Jason Cothren while in the commission of aggravated assault; Count 3 – the aggravated assault of Jason Cothren; Count 4 – the aggravated assault of Claude Cothren; and Count 5 – the aggravated battery of Claude Cothren. Nations was tried before a jury April 21-24, 2008, and was found guilty of all charges. He was sentenced to life in prison on Count 1, and a consecutive 20 years in prison on Count 5. Count 3 was found merged with Count 1 and Count 4 was found merged with Count 5 for the purpose of sentencing; Count 2 stood vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). A motion for new trial was filed on April 28, 2008, and amended motions for new trial were filed on November 20, 2008, January 30, 2009, and July 9, 2009. The motion for new trial, as amended, was denied on January 26, 2011. The case was docketed in this Court for the April 2011 term, and the appeal was submitted for decision on the briefs.

the mobile home, each consuming about a twelve-pack of beer. At approximately 6:30 p.m., Nations came home and joined them in drinking. Later that night, Jason and Nations got into an argument about a barn building job in which the two were involved. Jason then exhibited anger toward Tanner, and Claude and Clifton asked him to leave, and Jason acquiesced. However, Jason returned and he argued with Clifton, but there was no physical violence between the men. Nations then retrieved a shotgun from underneath a bed and confronted Jason. Jason yelled, "Motherf---ers think you're going to shoot me?" Nations responded, "I will if I have to." Claude interjected, "No you won't. That's my son. I'll handle him." Seconds later, Nations aimed the shotgun at Jason. Claude exclaimed, "No, no, no. This don't need to be," and reached his hand in front of the shotgun in an attempt to shield his son. Nations fired the shotgun, fatally wounding Jason in the head, and in the process, injuring Claude to the extent that Claude's fingers were partially severed and dangling from his hand. Claude "slung at" Nations, but Nations finished his beer before he "took off" in his pickup truck. He fled to North Carolina where he was arrested that evening and later extradited to Georgia. When Nations was stopped by North Carolina officers, the pickup truck's headlights, although functional, were not turned on, and Nations had the "very strong" odor of alcohol on his breath, was unsteady on his feet, and exhibited "very slurred" speech; he had blood on his shirt and pants.

1. The evidence was sufficient for a rational trier of fact to find Nations guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Nations contends that he was denied due process because his convictions were obtained using perjured testimony by Clifton. But, the contention is unavailing.

Approximately a month after Nations's trial and convictions, a man named Donald Teague telephoned the office of the Towns County District Attorney and claimed to have information about a witness lying at Nations's trial. The office of the district attorney asked the sheriff's department to follow up with Teague, and an employee of the sheriff's office conducted a telephone interview with Teague on May 27, 2008. Teague stated that he went to Clifton's residence on May 19, 2008, to discuss a mutual friend who had passed away, and while there, Clifton told him that he had lied at Nations's trial by testifying that he had no knowledge of Jason threatening anyone prior to the fatal event. Teague was instructed to go to the district attorney's office and set up a meeting, a written report of the exchange with the sheriff's office employee was made, and a copy of it sent to the office of the district attorney. Sometime

before September 29, 2008, Teague went to the district attorney's office and related that he had a tape that he believed would exonerate Nations because there was a witness who had committed perjury at trial and the witness's admission of perjury was recorded on the tape. An assistant district attorney listened to the audiotape, including a portion emphasized by Teague, and concluded that it did not substantiate Teague's assertions. Also, the assistant district attorney noticed the odor of alcohol on Teague's breath to the extent that he was concerned about Teague driving upon leaving his office, and the police may have been alerted to be on the lookout for Teague. The assistant district attorney took possession of the audiotape, alerted the colleague who had handled Nations's trial about the exchange, and physical custody of the audiotape was turned over to the sheriff's department for preservation purposes. Teague died on October 5, 2008. The defense received from the State both a copy of the written police report and an unaltered CD of the audiotape in January 2009.[2]

OCGA § 17-1-4[3] mandates the setting aside of a verdict or judgment obtained or entered as a result of perjury "when the judgment could not have been obtained without the perjured evidence and the perjurer has been duly convicted thereof." *John v. State*, 282 Ga. 792, 795 (4) (653 SE2d 435) (2007). There is no showing that any perjury actually occurred or that Clifton was ever charged with or convicted of perjury. Id. Even assuming arguendo that Clifton perjured himself on the stand, it cannot be said that the guilty verdicts and consequent judgments could not have been obtained without such evidence inasmuch as there was testimony from other witnesses at the crime scene portraying Nations's unjustified shooting of Jason. Id.

Nor is there any basis for Nations's claim of a due process violation. This is not a situation in which the prosecution knew or

---

[2] At the hearing on the motion for new trial, as amended, the State agreed to allow the defense to play for the superior court a copy of the audiotape which was "enhanced," in that it had some of the background noise removed, even though the defense had not provided the State with the "enhanced" version until the day of the hearing.

[3] OCGA § 17-1-4 states:

Any judgment, verdict, rule, or order of court which may have been obtained or entered shall be set aside and be of no effect if it appears that the same was entered in consequence of corrupt and willful perjury. It shall be the duty of the court in which the verdict, judgment, rule, or order was obtained or entered to cause the same to be vacated upon motion and notice to the adverse party; but it shall not be lawful for the court to do so unless the person charged with perjury shall have been duly convicted thereof and unless it appears to the court that the verdict, judgment, rule, or order could not have been obtained and entered without the evidence of the perjured person, saving always to third persons innocent of such perjury the rights which they may lawfully have acquired under the verdict, judgment, rule, or order before the same shall have been actually vacated.

should have known about a witness's untruthful testimony prior to trial or circumstances which resulted in the corruption of the essential truth-seeking function of the trial process. Compare *Fugitt v. State*, 251 Ga. 451, 453 (1) (307 SE2d 471) (1983); *Williams v. State*, 250 Ga. 463 (298 SE2d 492) (1983).

3. There is likewise no merit to Nations's further claim that he was denied due process of law, and that the truth-seeking process was indeed corrupted; he urges this was so because the prosecution withheld exculpatory evidence, i.e., the audiotape made by Teague, irreparably prejudicing his defense in a manner "akin" to a violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Nations argues that his case is unique because he was deprived of the chance to fully explore the issue of Clifton's "perjured" testimony as he was not given any notice of it prior to Teague's death and not until Clifton was diagnosed with Alzheimer's disease and had lost the ability to recall his discussion with Teague. But, as discussed in Division 2, supra, the evidence does not warrant a finding that Clifton committed perjury by virtue of his testimony at trial. Moreover, even assuming that the audiotape was arguably exculpatory, in order to demonstrate a *Brady* violation, a defendant must show, among other things, that the prosecution suppressed the favorable evidence and that had it been disclosed to the defense, there exists the reasonable probability that the outcome of the trial would have been different. Nations has not shown that the State, either purposefully or through oversight or neglect suppressed the audiotape, much less that any earlier notice of the existence of the audiotape would have actually benefitted him or that any alleged delay deprived him of a fair trial. *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996).

4. Nations contends that his trial counsel was ineffective in several respects. However, in order to succeed on his claim of ineffective assistance, Nations must satisfy both prongs of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), that is, he must prove that his attorney's performance was deficient and that there is a reasonable probability that the result of his trial would have been different but for such deficiency; in this Court's review of the trial court's decision regarding the alleged ineffectiveness, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but it is to independently apply the legal principles to the facts. *Sanders v. State*, 289 Ga. 655 (4) (715 SE2d 124) (2011).

(a) Nations first argues that trial counsel was deficient in failing to impeach Tanner through the use of prior inconsistent statements. Specifically, he complains that counsel failed to properly impeach Tanner with certain comments in a statement she made to police on

the night of the incident to the effect that Nations and Jason had been in a "continual argument," that Nations said he would use the shotgun to protect himself, and that Tanner opined to the officer that the shooting "just happened." He urges that counsel should have "confronted" Tanner with either the police officer to whom she made the statement or the recording of the statement. But, the assertion fails.

The record reveals that on cross-examination, defense counsel did indeed attempt to impeach Tanner with comments in her statement to the police, including focusing on Tanner's relating to the police that prior to the shooting, Jason was "destroying the house," and that Nations said that "if it came to it," he would use his weapon for self-protection. Further, at the motion for new trial hearing, trial counsel testified that Nations's defense was "a combination of self-defense, justification, and accident," which was consistent with what Nations had represented to law enforcement from the beginning, and that the totality of the testimony at trial about what occurred during the course of the entire day of the shooting placed before the jury evidence that at least during parts of the day Jason exhibited both verbal and physical anger. What is more, the video recording of Tanner's statement was admitted at trial during the testimony of the police officer at issue, and counsel chose not to lay a foundation for impeaching Tanner in regard to the statement because he knew that the State would have the videotaped statement admitted into evidence and played, which was the defense's preferred method for placing the evidence of any inconsistency before the jury.

The scope of cross-examination is generally a matter of trial tactics and strategy, and will rarely constitute ineffective assistance of counsel. *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007). And, Nations has not established that trial counsel's tactics in this regard were unreasonable. *Phillips v. State*, 285 Ga. 213, 223 (5) (i) (675 SE2d 1) (2009).

(b) Nations also complains that trial counsel was deficient for failing to object to the admission into evidence of the same video statement by Tanner on the basis that her prior consistent statements were then before the jury and served to bolster her credibility and give her testimony "special prominence" in the mind of the jury. But, counsel's testimony at the hearing on the motion for new trial, as amended, makes plain that the defense wished the jury to view Tanner's statement, and counsel did not believe that the defense would be successful in attempting to admit into evidence only certain portions of the statement. Again, this is a matter of trial strategy and tactics, which has not been shown to be unreasonable so as to form a basis for a claim of counsel's ineffectiveness. *Cooper v. State*, supra

at 762 (4) (a); *Phillips v. State,* supra at 223 (5) (i).

(c) Nations next maintains that trial counsel was deficient for failing to object, on the basis that it was irrelevant and speculative, to testimony by Claude to the effect that he would have intervened if Jason had "tried to do something" to Nations, and that, if Jason had threatened to kill those in the house, he would not have taken the statement seriously, particularly given the amount of alcohol his son had been drinking that day.

Counsel testified that he did not object because he did not see a legitimate basis for doing so, and that even if he had, he believed that the trial court would have allowed the testimony anyway, and that he thought that the testimony did not help or hurt Nations but was neutral because it reflected most fathers' reactions in such a scenario. Pretermitting the existence of any deficiency in this regard, Nations cannot demonstrate prejudice in light of the fact that the gist of the father's remaining testimony was that the shooting of his son was unprovoked; Nations has failed to show that but for counsel's failure to object to the specific statements, the outcome of his trial would have been any different. *Kitchens v. State,* 289 Ga. 242, 244 (2) (b) (710 SE2d 551) (2011).

(d) Nations asserts that trial counsel was deficient for not objecting to testimony by police officers regarding his arrest for driving under the influence of intoxicants in North Carolina on the evening of the shooting. However, in general, the circumstances connected with a defendant's arrest are admissible into evidence, even if such circumstances incidentally place the defendant's character in issue. *Nichols v. State,* 282 Ga. 401, 403 (2) (651 SE2d 15) (2007). And, the failure to make a meritless objection will not provide support for finding trial counsel ineffective. *Wesley v. State,* 286 Ga. 355, 357 (3) (e) (689 SE2d 280) (2010). Moreover, there could have been no prejudice to Nations by this testimony because there was ample and undisputed evidence that Nations had consumed a substantial amount of alcohol prior to the shooting and his flight from the crime scene. *Kitchens v. State,* supra at 244 (2) (b).

(e) Inasmuch as Nations did not show that his trial counsel was ineffective in any of the ways claimed, his contention that trial counsel's individual and cumulative errors prejudiced him and deprived him of a fair trial is without merit. *Smith v. State,* 288 Ga. 348, 354 (8) (j) (703 SE2d 629) (2010).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 2011.

*Nathanael A. Horsley,* for appellant.
*Jeffrey Langley, District Attorney, Christopher M. Foss, Assistant*

District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General, for appellee.