S07A0822. NICHOLS v. THE STATE.
(651 SE2d 15)

HINES, Justice.

James Lynn Nichols appeals the denial of his motion for new trial and his conviction for malice murder in connection with the fatal shooting of Rodwell Jones, Jr. Nichols challenges the admission of evidence of arms and ammunition found at his home which were not used in the shooting; the admission of certain evidence about the

victim; and the effectiveness of his trial counsel for failing to sufficiently object to the evidence of the found arms and ammunition and the State's argument to the jury regarding such evidence. For the reasons that follow, we reverse.[1]

The evidence construed in favor of the verdicts showed that on the evening of June 6, 2005, Nichols and his then fiancée, Sherinda Redmond, stopped at a convenience store in DeKalb County. Redmond went inside the store while Nichols remained in the car. As Redmond approached the register, Rodwell Jones, Jr. was ahead of her in line. Jones indicated to the store clerk that Redmond would pay for his items as well. Redmond and Jones argued. Redmond exited the store and handed her purchases to Nichols through the car's open window. Jones left the store, walked by the couple's car, and Jones and Nichols "exchanged words." Jones was belligerent and shouted at Nichols; Redmond was involved in the argument. A bystander was concerned that there was going to be a physical confrontation and called 911 for assistance.

Jones walked toward another vehicle, but then returned to Redmond and Nichols's car. Jones verbally threatened Nichols. When Jones got about an "arm's length" from Redmond, Nichols got out of the car. Jones assumed a boxing stance and threw some punches at Nichols. Nichols drew a handgun. He fired nine shots at Jones in "rapid succession" or with a "momentary pause" after the first shot, and the remaining shots in "rapid succession." Jones ran around the corner of the convenience store, and Nichols ran after him. It was difficult for Nichols to run because he was a large individual and had some mobility issues; he sometimes used a cane or a wheelchair. Jones got 100 to 150 yards down the road before he collapsed. He died from four gunshot wounds to the body, one of them in the back. Jones was found to be unarmed.

Nichols and Redmond drove home, packed some clothes, and left for Florida in the "big rig" that Nichols drove for a living. Nichols and Redmond returned to their home nine days later, where they were arrested by police 45 minutes after their arrival.

1. The evidence was sufficient to enable a rational trier of fact to find Nichols guilty beyond a reasonable doubt of the crimes for which

---

[1] The fatal shooting occurred on June 6, 2005. On August 15, 2005, a DeKalb County grand jury indicted Nichols for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. Nichols was tried before a jury March 6-9, 2006, and found guilty of all charges. On March 21, 2006, he was sentenced to life in prison for malice murder; the felony murder conviction stood vacated by operation of law and the aggravated assault was found to be merged for the purpose of sentencing. A motion for new trial was filed on April 19, 2006, amended on December 18, 2006, and denied on December 20, 2006. A notice of appeal was filed on January 18, 2007, and the case was docketed in this Court on February 19, 2007. The appeal was argued orally on May 14, 2007.

he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During a search of Nichols's home at the time of his arrest, the police discovered an "AK-type" rifle, a 12-gauge pump shotgun, and ammunition, none of which were used in the shooting of Jones. The pistol used in the shooting was never recovered. Yet, the State was allowed to introduce into evidence both the rifle and the shotgun as well as photographs of these weapons; the State also placed in evidence the magazine for the rifle, three boxes and a bag of ammunition for the rifle, and a bag of shotgun ammunition. The trial court permitted the introduction of the evidence after the State argued that it was admissible as part of the circumstances of the search and the res gestae of the arrest.[2] In closing, the State argued that such evidence demonstrated Nichols's propensity for violence and killing and that the only purpose for the found weapons was to kill people.

Nichols contends that the trial court erred in admitting the evidence because it was irrelevant and prejudicial. We agree.

As a general rule, the circumstances connected with a defendant's arrest are admissible, even if such circumstances incidentally place the defendant's character in issue. *Benford v. State*, 272 Ga. 348, 350, n. 2 (528 SE2d 795) (2000); *Upshaw v. State*, 257 Ga. App. 199, 200 (3) (570 SE2d 640) (2002). However, that is not the end of the inquiry because the evidence still must be shown to be relevant. *Benford*, supra at 350 (3); *Upshaw*, supra at 200 (3). And the circumstances connected with an accused's arrest are not automatically relevant. *Benford*, supra at 350 (3). "Rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence." Id. Indeed, when evidence of certain circumstances surrounding the arrest is wholly unrelated to the charged crime, the arrest is remote in time from the charged crime, and the evidence is not otherwise shown to be relevant, it should not be admitted, and thus, it is an abuse of the trial court's discretion to do so. Id.; *Crosby v. State*, 269 Ga. 434, 435 (3) (498 SE2d 62) (1998). That is precisely the situation in this case.

It is undisputed that the firearms and ammunition at issue were in no way involved in the fatal shooting of Jones. Compare *Dukes v. State*, 273 Ga. 890, 892 (4) (548 SE2d 328) (2001). The firearms were not even the same type of weapon; Jones was shot with a pistol, not a rifle or shotgun. The firearms and ammunition did not shed any light whatsoever on the circumstances of the shooting. In fact, at

---

[2] The trial court admitted the evidence after stating, "I think items that were collected as part of the search are permissible to admit. . . ."

trial, several police officers involved in the case acknowledged that such weapons and ammunition had no relevance at all to the shooting.[3]

As has been noted, the circumstances surrounding an arrest are often admissible as part of the res gestae, but that is so in situations in which the arrest is contemporaneous or closely related in time to the offense and has a logical relation to the offense. *Shelton v. State*, 252 Ga. App. 444, 447 (3) (556 SE2d 540) (2001). Here, there was a nine-day gap between the shooting and the arrest. The fact that Nichols left Georgia shortly after the shooting and was apprehended shortly after his return does not make the temporal tie between the shooting and the arrest any tighter.[4] As to the weapons and ammunition, the State did not establish any illegality regarding their presence in the home; nor did the State establish that Nichols ever carried the weapons or fired them. Evidence that Nichols had in his home a rifle, shotgun, and ammunition, without more, was not probative of his guilt with regard to the shooting of Jones in the convenience store parking lot following an altercation with him. See *Traylor v. State*, 280 Ga. 400, 403 (2) (627 SE2d 594) (2006).

The State asserts that the evidence was relevant because Nichols claimed that he acted in self-defense, that he mistakenly thought Jones might have a gun, and that his arthritis prevented him from defending himself in any way other than shooting Jones. But again, the fact that Nichols may have possessed other firearms not involved in any manner in the shooting is not probative of the issue of whether he validly acted in self-defense or of the question of his intent in firing the pistol at Jones. *Traylor*, supra at 403 (2).

The State urges another basis for admission of the evidence was to contradict Nichols's mother's testimony that Nichols was not a troubled child, was non-violent, and was nurturing. However, the fact that Nichols may have possessed firearms and ammunition in his home does not demonstrate his state of mind as a child, that he lacked a nurturing personality, or that he was violent. Merely owning or possessing a firearm does not impute even bad character. *Traylor*, supra at 402 (2); *Henderson v. State*, 272 Ga. 621, 622 (2) (532 SE2d 398) (2000).

---

[3] One detective testified that he could not make any determination "relevant" to the shooting from the recovered rifle or shotgun. Another officer testified that no determinations as to how or why Jones was shot could be made from the weapons or ammunition.

[4] The State urges that the "gun evidence" in Nichols's residence was not negatively impacted by the nine-day delay because the "residence was in the same condition it would have been had the search warrant been executed an hour and forty-five minutes after the shooting, itself." But, the State's assertion regarding the status of the residence is mere speculation. Moreover, the fact that the residence may have been vacant for the nine days does not alter the temporal frame of the arrest in regard to the shooting.

As is plainly shown by its comments and argument at trial, the State wanted the demonstrative evidence of the rifle, shotgun, and ammunition to show that Nichols had a propensity for violence and the inclination to kill people; therefore, he was not acting in self-defense or in the context of voluntary manslaughter when he fired at Jones. However, in order to show that a defendant has a propensity for certain behavior, the State must introduce evidence of the defendant's other similar behavior. *Belmar v. State*, 279 Ga. 795, 800 (3) (621 SE2d 441) (2005). But, the State did not attempt to introduce into evidence the found arms and ammunition as a separate and similar event or occurrence to show Nichols's propensity to act in the manner that he did in the incident with Jones. And a primary aim of the rules regarding the introduction of such separate events or transactions is to avoid an improper inference of propensity. *Smith v. State*, 232 Ga. App. 290, 291 (1) (501 SE2d 523) (1998). Simply put, if the circumstances surrounding the arrest were not validly part of the res gestae and were not relevant and material to the issues on trial, there was no basis for their admission into evidence. *Shelton*, supra at 447 (3).

The trial court's error in admitting the evidence requires that Nichols be given a new trial unless it can be found that it is highly probable that the error did not contribute to the judgment; in other words, reversal is not required if the evidence of Nichols's guilt was so overwhelming that there was no reasonable probability that the verdicts of the jury would have been different in the absence of such error. *Belmar*, supra at 800 (3); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). In this case, there was substantial evidence that prior to firing the weapon, Jones was the aggressor in the encounter with Nichols. And while the evidence construed in favor of the verdicts authorized findings of Nichols's guilt for malice murder, felony murder, and aggravated assault, it did not demand such findings. Thus, it cannot be said that there was no reasonable probability that the jury's verdicts would have been different in the absence of the improper admission of the evidence at issue. *Belmar*, supra at 800 (3); *Johnson*, supra at 61. Consequently, Nichols must be given a new trial.

3. Because it may become an issue on retrial, we address Nichols's further contention that the trial court erred by admitting certain evidence about Jones, i.e., that he was shot while he was returning from his grandmother's memorial service, that he provided more emotional support for his mother than his siblings, and that Jones's mother did not get to say goodbye to him. Evidence which tends to show the victim's state of mind in regard to the defendant may be relevant in instances in which the defendant claims self-defense. See *Massey v. State*, 272 Ga. 50, 51 (3) (525 SE2d 694) (2000); *Dixon v.*

*State,* 256 Ga. 658, 660 (2) (352 SE2d 572) (1987). Thus, assuming that the State would again attempt to introduce such evidence before the jury, the admissibility of the evidence would depend on whether it in some manner was relevant to shed light on Jones's state of mind in regard to Nichols at the time of the fatal encounter.

4. The analysis and determination in Division 2 make it unnecessary to address Nichols's remaining contentions regarding the effectiveness of trial counsel.

*Judgments reversed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Gerard B. Kleinrock,* for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.