## S12A0495. RUCKER v. THE STATE.
### (728 SE2d 205)

HINES, Justice.

Jonathan Rucker appeals his convictions for two counts of malice murder in connection with the fatal shootings of Michael Lowe and Shaunta Bray, one count of kidnapping with bodily injury as the result of the abduction and rape of Arnethia Calhoun, and one count of kidnapping resulting from the abduction of Brandy Neal. Rucker challenges the admission into evidence of photographs depicting videotapes found in one of his vehicles at the time of his arrest and photographs of tattoos on Rucker's body; he also claims that portions of the State's closing argument were improper. For the reasons that follow, the challenges are without merit and we affirm.[1]

Viewed in the light most favorable to the verdicts, the record reflects the following. At approximately 1:00 a.m. on June 13, 2004, Rucker picked up Calhoun and Neal at home in Douglasville to bring them to a nightclub in Atlanta; Calhoun and Neal had not previously met Rucker, and the transport had been arranged by their mutual friend Bray. On the way to Atlanta, Rucker stopped at a gas station to refuel, and drove away without paying for the gas he pumped. Rucker drew a handgun and shot a round into the air to celebrate his theft. Then Rucker, Calhoun, and Neal drove to the Atlanta club,

---

[1] The crimes occurred on June 13, 2004. On June 18, 2004, a Douglas County grand jury returned a four-count indictment against Rucker: Count 1 – the malice murder of Michael Lowe; Count 2 – the malice murder of Shaunta Bray; Count 3 – the kidnapping with bodily injury by rape of Arnethia Calhoun; and Count 4 – the kidnapping of Brandy Neal. On January 14, 2005, the State filed its notice of intent to seek the death penalty. Rucker was tried before a jury in a bifurcated proceeding which began with voir dire on September 8, 2008. The guilt-innocence phase was September 29, 2008 – October 13, 2008, with the jury finding Rucker guilty on all counts. The sentencing phase was October 14, 2008 – October 17, 2008, resulting in the jury's recommendation that Rucker receive a sentence of life in prison without the possibility of parole for each count of malice murder. Rucker was sentenced to consecutive terms of life in prison without the possibility of parole on Counts 1, 2, and 3, and a consecutive term of 20 years in prison on Count 4. A motion for new trial was filed on November 25, 2008, and it was denied on July 25, 2011. A notice of appeal was filed on August 22, 2011, the case was docketed in the January 2012 term of this Court, and the appeal was orally argued on March 6, 2012.

there to join Bray and Lowe. The group decided to leave the club and go to Rucker's home in Atlanta. Lowe and Bray drove in Lowe's gold-colored Ford Taurus, and Rucker drove Calhoun and Neal. Lowe, Bray, Calhoun, and Neal decided to leave Rucker's home and not return, but they told Rucker they were just going to a store. The four left in Lowe's Taurus and went to a gas station, where Rucker drove up and confronted them about where they were going. They no longer wanted to socialize with Rucker and lied to him that they were going to Lowe's home.

The four left the gas station and began to drive back to Douglasville to the apartment complex where Neal resided. During this time, Rucker repeatedly telephoned the four, who were unaware that Rucker was following them back to Douglasville. The four arrived at the Douglasville apartment complex, and Rucker followed shortly thereafter. He parked next to Lowe's Taurus, and climbed into the back seat with the two women, thereby sitting behind Lowe, who was in the driver's seat and Bray, who was seated on the passenger side. Lowe and Bray began to chide Rucker about failing to commit a robbery of another man who had been with them earlier in the evening. Lowe made a derogatory comment, and Rucker drew a handgun, called Lowe a "b___h n____r," and fatally shot Lowe in the right side of his head. Rucker then fatally shot Bray in the left side of his head. Bray's blood splattered over Calhoun. Both men were shot at very close range and died almost instantly. The bullet that killed Bray exited his skull and became lodged in the passenger door; the bullet that killed Lowe remained in his skull.

At gunpoint, Rucker ordered Calhoun and Neal to exit the Taurus and get into his car. The women pleaded with Rucker to release them, but he threatened to shoot them. Against their will, Calhoun and Neal got into Rucker's car, and Rucker drove them to his home in Atlanta. During the drive, Rucker told the women that he killed Lowe and Bray because they had "disrespected" him. Rucker also told them that he had killed someone before, but that this was the first time he had killed someone "execution style."

After Rucker and the women arrived at his home, Rucker locked the doors and ordered Calhoun to wash the blood off her body. Rucker also washed blood off himself and placed his clothing and the handgun in plastic bags. He ordered Calhoun to go into a bedroom and strip off her clothing. Rucker then raped Calhoun. Following the rape, Rucker ordered the two women to again get in his car and he drove them to meet his cousin Hurley near the Lenox Mall/Lindbergh area of Atlanta. Rucker, the women, and Hurley went to Hurley's home where the women were held against their will. Rucker again raped Calhoun. After this rape, Rucker told Calhoun and Neal that he

would release them, and he drove them to a gas station in Buckhead where they were freed. During this drive, Rucker again related that he shot Lowe and Bray because they had "dissed" him that night. He also stated that he had not wanted to kill Bray, but had done so because Bray was a witness to Lowe's murder. The women returned by bus to the apartment complex in Douglasville, where the bodies of Lowe and Bray had been discovered and the crime scene was being processed by police. When found, Lowe's vehicle was still running, and the inside of it was filled with condensation from the air conditioning, and blood and brain matter from the murder victims.

Calhoun and Neal were interviewed by police. The women did not know Rucker's real name, but were able to provide police with a cell phone number which was traced to Rucker. In photographic lineups, the women were able to identify Rucker as the shooter, kidnapper, and rapist. A rape kit performed on Calhoun showed Rucker's semen present inside her vagina.

On June 14, 2004, Rucker was arrested as he was attempting to flee with his parents. Rucker and his mother were in a Cadillac, and Rucker's father was in a Ford Explorer. Both vehicles were seized, and investigators recovered a suitcase filled with, among other things, Rucker's clothes, prescription medications, travel items, two fully-loaded handguns that were consistent with that used by Rucker during the crimes, ammunition and firearm magazines, a hat worn by Rucker on the night of the crimes, bedding, towels, food, automotive supplies, and a number of VHS tapes labeled with the names of violent films and documentaries.

Rucker pled not guilty by reason of insanity, and the court ordered that he undergo an independent psychiatric evaluation. The evaluation resulted in the expert findings that Rucker was competent to stand trial and not legally insane at the time he committed the crimes.

1. The evidence was sufficient to enable a rational trier of fact to find Rucker guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Rucker contends that the trial court erred in admitting into evidence photographs of videotapes labeled with violent content which were found in one of the two vehicles in which Rucker and his family were attempting to flee at the time of Rucker's arrest; he argues that they were not relevant to the issues on trial and improperly impeached his character.

Generally, the circumstances connected with a defendant's arrest may be admitted into evidence, even if those circumstances incidentally place the defendant's character in issue. *Nations v. State*, 290

Ga. 39, 44 (4) (d) (717 SE2d 634) (2011). However, such evidence still must be shown to be relevant. *Nichols v. State*, 282 Ga. 401, 403 (2) (651 SE2d 15) (2007).

The photographs were properly admitted as the presence of the videotapes, among those items which were thought to be important enough to take during the attempted flight, were a circumstance arguably bearing on Rucker's sanity at the time he committed the crimes. There was no error in admitting this evidence in response to Rucker's insanity defense.

3. Rucker also contends that the trial court erred in permitting into evidence photographs of tattoos on his body, some of which were violent in nature, taken after he was in custody, as they too were irrelevant and amounted to improper character evidence.

First, it should be noted that at the time the issue of admission of the photographs was argued to the trial court, Rucker did not object on the basis of alleged improper character evidence; his objection was that there was "a complete absence of relevancy," and that as to certain of the photographs which depicted Rucker in his underwear, it was "kind of demeaning to present Mr. Rucker in his underwear to the jury." Inasmuch as Rucker did not timely object to admission of the evidence as the improper injection of his character, he may not now raise it on appeal. *Butler v. State*, 273 Ga. 380, 382 (2) (541 SE2d 653) (2001).

Even if Rucker did not waive his claim of improper character evidence, his complaint is unavailing. The decision to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case does not become inadmissible because it incidentally places the defendant's character in issue. *Boring v. State*, 289 Ga. 429, 433 (2) (711 SE2d 634) (2011). Here, the evidence of the tattoos was relevant and material to the critical issue of Rucker's mental competence leading up to the commission of the crimes. Rucker's mother testified that her son's negative behavior in the years preceding the crimes was the result of his mental illness, so on cross-examination, the State questioned her about the time frame that Rucker had acquired the disturbing tattoos, and she admitted that he had done so prior to the time that she believed he was mentally ill. Thus, the testimony had direct bearing on the issues of the evolution and effect of Rucker's alleged mental illness, which was the gravamen of his insanity defense.

4. Lastly, Rucker contends that he is entitled to reversal of his convictions and a new trial because in closing argument the prosecutor made a comment which improperly suggested that Rucker posed a threat of "future dangerousness" and constituted a "golden rule" violation. But, the contention is unavailing.

Rucker complains that after the State "[set] the stage by pointing out the imprecision of psychiatry and psychology and by pointing out the number of potentially dangerous people like [him] in society," it improperly commented, "Are we really so sure of this science of forensic psychology and psychiatry that we bet our lives on it?"[2] However, at trial, Rucker contemporaneously objected to the argument only on the basis that it was "improper," and asked the trial court to instruct the jury to disregard the cited statement and "chastise the district attorney." Therefore, the complaints Rucker now makes have not been preserved for appellate review. See *Henderson v. State*, 285 Ga. 240, 245 (6) (675 SE2d 28) (2009); *Watson v. State*, 278 Ga. 763, 775 (17) (604 SE2d 804) (2004). Nevertheless, the comment at issue did not violate the "golden rule" against inviting the jurors to put themselves in the shoes of a victim. See *Sanders v. State*, 290 Ga. 637 (723 SE2d 436) (2012). And, even assuming that the comment raised the specter of Rucker's dangerousness in the future, it was harmless in light of the overwhelming evidence of Rucker's guilt. See *Jones v. State*, 288 Ga. 431, 434 (704 SE2d 776) (2011); *Patterson v. State*, 285 Ga. 597, 601 (5) (a) (679 SE2d 716) (2009); *Bellamy v. State*, 272 Ga. 157, 161 (11) (527 SE2d 867) (2000).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 29, 2012.

*J. Scott Key*, for appellant.
*David McDade, District Attorney, Emily K. Richardson, James A.*

---

[2] The prosecutor stated in relevant part:

Mr. Rucker is not the rarest of rarities. Mental illness, insanity are not synonymous. We are surrounded by mentally ill people, we are surrounded by people with schizophrenia and schizoaffective disorders, and it's because we have made a decision to live with them, work with them and mainstream them in society.

Mr. Rucker was not an escapee from a mental institution, spouting gibberish, when he committed these crimes. He was not on disability from the government. . . . He was, instead, free to roam the world at will, free to drive his car, free to listen to his rap music, free to carry his guns, free to steal gas, free to sell drugs, free to kill, free to decide, at his discretion, whether or not to take his medication.

And another major point that needs to be made, and going back to what I said about the presumption of sanity, and that is this: Do you remember me holding the pen and asking the doctor if I let go of this pen, what is going to happen? He said, it's going to fall to the ground. You know what? It's going to fall to the ground every time because I don't have any magic to stop it. *Are we really so sure of this science of forensic psychology and psychiatry that we bet our lives on it?*

*Dooley, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Assistant Attorney General,* for appellee.