**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 11, 2013**

# In the Court of Appeals of Georgia

A12A2146. WRIGHT v. THE STATE.

PHIPPS, Presiding Judge.

In connection with crimes perpetrated upon Wayne Thatcher, a jury found Glenard Rico Wright guilty of armed robbery, aggravated assault, possession of a firearm during the commission of a crime (armed robbery), and theft by taking. In this appeal, Wright contests the sufficiency of the evidence to support his convictions,[1] the admissibility of certain evidence, the propriety of various remarks made during the state's closing argument, the trial court's refusal to instruct the jury on robbery as a lesser included offense of armed robbery, and the court's rejection of his claim

---

[1] For purposes of sentencing, the aggravated assault count was merged with the armed robbery count.

of ineffective assistance of trial counsel. Because Wright has demonstrated no reversible error, we affirm.

1. Where, as here, the appellant challenges the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

Thatcher testified about the crimes committed against him, as follows. On January 18, 2009, at about 8:40 a.m., he drove to a park's aquatic center, where he planned to attend his granddaughter's swim meet. After parking his SUV about a block down the street, he began walking to the aquatic center, holding in his hand his cell phone and keys. Thatcher noticed three individuals walking together nearby; abruptly, the male among the three approached him, thrust a gun approximately six inches from Thatcher's face, took his cell phone and keys, then commanded Thatcher to "Get out of here," while waving the gun. Thatcher ran into the aquatic center and reported the incident to police. At trial, Thatcher identified Wright as the gunman.

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Evidence showed that, at about 11:15 a.m., a police officer drove Thatcher to a location about a mile from the aquatic center, where his stolen SUV had crashed. A police officer had unsuccessfully pursued the SUV's driver, a male who fled on foot; however, two girls that police discovered at the SUV were detained at the crash site. Thatcher identified one girl as one of the three individuals he had seen when walking to the aquatic center; Thatcher did not identify the other. Thatcher's SUV key was in the ignition, and his cell phone was found inside the vehicle. Numerous calls had been placed using his phone since it was taken, including one call to Wright's mother, with whom Wright lived. Police took the two girls into custody. One girl was Wright's cousin, and the other girl was the cousin's friend. Each girl appeared at Wright's trial as a witness for the state.

Wright's cousin was 15 years old when she testified at the trial held in March 2010. She recounted that on the night before the incident, she and her friend had spent the night at Wright's mother's house. The next morning, January 18, she and her friend began walking to the park where a swim meet was taking place; Wright soon "caught up" with them. Wright's cousin recalled at trial seeing a man parking his SUV, Wright approaching the man as the man was walking toward the aquatic center, Wright putting a gun to the man's head, and the man then running away. Wright's

3

cousin testified that, later that day, she and her friend saw Wright standing by the man's SUV. They all got into the SUV, and Wright drove away. The police were soon following them. While the SUV was in motion, Wright jumped out of it and fled on foot. The SUV crashed, and the two girls, but not Wright, were taken into police custody. That same day, Wright's cousin gave a written statement to police.

Wright's cousin's friend was 13 years old when she testified to the following. On the night before the incident, January 17, she and Wright's cousin slept at Wright's mother's house. Early the next morning, she and Wright's cousin walked to the park with the aquatic center, and Wright joined them later. Wright made a comment to them about the large number of cars in the area and said that he needed a car. About that time, the girl testified, Wright noticed an SUV being parked on a hill nearby and told them that he liked that vehicle; so, he left the girls, walked up the hill, then approached Thatcher, the man who just had parked the SUV. The girl was asked at trial, "What did you see happen next?" She answered that she and Wright's cousin started "walking like – like going up the hill. And I saw the man, Mr. Thatcher, running down the hill." She recounted further that Thatcher appeared scared as he was running away and that Wright meanwhile sped away in Thatcher's SUV.

Wright's cousin's friend testified further that when she and Wright's cousin later saw Wright with the SUV, they got into the SUV and Wright drove away. Soon, a police car was trailing them, and Wright accelerated. After turning down a street that ended at a ravine, Wright announced that they would all jump out (while the SUV was moving). She elected to stay in the back seat; Wright's cousin tried to jump out, but the door pinned her leg to the vehicle; and Wright escaped on foot into nearby woods. She and Wright's cousin were taken into custody, and that day, she gave a written statement to police.

The state showed that Wright was arrested about four months after the criminal incident, in May 2009.

Wright, who was about 20 years old at the time of trial, did not testify, but called as witnesses his mother, his maternal aunt, and another relative. His mother testified that Wright was living with her at the time in question and typically slept or stayed "in his bed laying around" until noon each day. She recalled specifically the date in question, and testified that Wright was at home that morning until at least 10:30. She testified that neither of the girls who were found at Thatcher's crashed SUV had spent the previous night at her home. To her knowledge from cleaning her son's room, Wright did not own a gun. Wright's mother recalled that she did not

immediately learn about the criminal incident involving Thatcher, but that when she accompanied Wright to a hearing on charges related thereto, Wright apprised her of the allegations, including the specific date of the incident. She conceded at trial that, despite determining prior to Wright's trial that Wright was at home at the time of the crimes, she had not told police so until the trial date.

Wright's maternal aunt testified that she was living with Wright and his family during the relevant time period, that Wright did not work, and that he typically got out of bed at about noon. She, too, recalled specifically that Wright was in his room on the morning of the incident, and that neither of the girls who were later discovered at Thatcher's crashed SUV had either spent the previous night at the residence or was at the residence that morning. She recalled further that Wright's mother had told her that Wright had been arrested for robbery, and she conceded at trial that she had never told the police that Wright could not have been the perpetrator.

Wright's third witness, another relative, testified that he, also, was living at Wright's residence at the time of the incident, that Wright had no job, and that Wright typically stayed in bed until early afternoon. This relative specifically recalled that, when he (the relative) woke up at about 11:00 or 11:30 a.m. on the particular date that Thatcher's property was taken from him, Wright was at home. This relative also had

6

not heard about the underlying criminal incident until about the time he learned that Wright had been arrested in connection therewith. He testified that, after Wright was arrested, his mother refreshed his memory of the particular date in question. He, too, conceded that he had not reported to police that Wright was at home that morning.

On appeal, Wright challenges the sufficiency of the evidence to support the guilty verdicts upon charges of: (i) armed robbery,[3] by taking, with use of a gun, a cell phone and keys from Thatcher; (ii) aggravated assault,[4] by pointing a gun at Thatcher; (iii) possession of a firearm during the commission of a crime (armed robbery);[5] and (iv) theft by taking Thatcher's SUV.[6] Wright cites what he claims were weaknesses in the state's case, including that the state's witnesses were not credible and gave contradictory accounts.

This evidentiary challenge presents no basis for reversal.

The jury, not this court, resolves conflicts in the testimony and weighs the evidence. And decisions regarding credibility are uniquely the province of the jury, which was not required to believe [the testimony

---

[3] OCGA § 16-8-41.

[4] OCGA § 16-5-21.

[5] OCGA § 16-11-106.

[6] OCGA § 16-8-2.

7

of Wright's witnesses], nor to disbelieve that of the state's witnesses. Where, as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdicts will be upheld.[7]

2. Wright contests, on various grounds, the admission of the following evidence.

(a) Citing his cousin's testimony that he committed the crimes with the use of a gun, Wright argues that the trial court erred by allowing the prosecutor to "lead its witness[ ] into making statements by putting words in the witness['s] mouth." The transcript shows that, on direct examination of this witness, the state elicited testimony that she was walking with her friend and Wright and that Wright left their company and ran to the man who had just parked an SUV. Direct examination continued.

Q:    Now, what did you do when you saw the defendant run up to the man that you saw parking the car?

. . .

A:    I was just standing there.

---

[7] *Buford v. State*, 309 Ga. App. 368-369 (710 SE2d 582) (2011) (footnotes omitted); see *Jackson*, supra.

Q: What was [your friend] doing?

A: Standing there.

Q: And I want you to look over and tell these folks what you saw the defendant do.

A: I seen him run up to – I seen him run up to the man, and then I seen the man run down the street.

Q: Now, did you see what happened between the two of them?

Q: Did you see the defendant with a gun?

Defense counsel objected to the latter question as leading. The court responded, "I understand your objection. Overruled. I will allow it." Wright's cousin thereafter testified that she saw Wright "put [the gun] to the man's head."

We reject Wright's characterization that the prosecutor put words in the witness's mouth. And "[a]s to the leading nature . . . of the question[ ], the trial court has the discretion to allow leading questions on direct examination, when a witness is nervous, or reluctant."[8] During the examination of Wright's then 15-year-old

---

[8] *Hayes v. State*, 268 Ga. 809, 812-813 (6) (493 SE2d 169) (1997) (citations omitted); but see *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993) ("Leading questions generally are allowed only on cross-examination.") (citation omitted).

cousin, she was occasionally non-responsive; the girl's demeanor caused the prosecutor to ask her whether she "need[ed] a minute"; and she revealed that she had been scared when she saw Wright put a gun to the man's head and was upset to be in court testifying against him. OCGA § 24-9-63 authorizes a court to allow leading questions "when, from the conduct of the witness or other reason, justice shall require it."[9] "Based on this statute, the courts have traditionally accorded a great deal of latitude in the examination of young or timid or otherwise disadvantaged witnesses."[10] We discern no abuse of discretion here, based upon the cited question posed to this witness.[11]

(b) Wright argues that the trial court erred by allowing evidence that when he was arrested on May 8, 2009, he told police that his name was "Terry Glenn Wright." Wright asserts that his arrest on that date was not for the incident involving Thatcher

---

[9] See OCGA § 24-9-63 (2010).

[10] *Bell v. State*, 294 Ga. App. 779, 781 (3) (670 SE2d 476) (2008) (citation and footnote omitted) (finding no abuse of discretion in allowing a prosecutor to ask leading questions of the 14-year-old witness, who was often non-responsive, spoke very softly, and exhibited signs of timidity and fear); *Cherry v. State*, 199 Ga. App. 879, 879-880 (1) (406 SE2d 531) (1991) (finding no abuse of discretion in allowing a prosecutor to ask leading questions of the 14-year-old reticent victim).

[11] See *Hayes*, supra; *Bell*, supra; *Cherry*, supra.

10

and that, because the evidence was thus irrelevant to the instant case and showed him to be a liar,[12] it impermissibly impugned his character.

This evidence was presented through the testimony of the arresting officer. But before that officer took the stand, and outside the presence of the jury, the court heard argument concerning the admissibility of the contemplated testimony. The prosecutor reminded the court of evidence that Wright was not apprehended on January 18, 2009, the date Thatcher was accosted and robbed, then posited to the court that Wright nevertheless likely knew that he was a suspect in that incident and thus gave a false name to police when arrested some four months later (albeit for an unrelated crime of cocaine possession) in an attempt to avoid being charged for the Thatcher incident. The prosecutor argued that a reasonable inference would arise from the arresting officer's contemplated testimony, together with other evidence, that Wright was in flight from police apprehension relating to the Thatcher incident. Moreover, the prosecutor told the court that he would elicit no evidence about Wright's cocaine possession charge. The court allowed the complained-of evidence, but explicitly ruled that any drug evidence was prohibited.

---

[12] On cross-examination of Wright's mother, the state elicited her testimony that Wright's name was not "Terry Glenn Wright."

11

"The decision to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case does not become inadmissible because it incidentally places the defendant's character in issue."[13] Evidence regarding the circumstances connected with an accused's arrest is "subject to the same standard of relevancy and materiality applicable to other evidence."[14] Thus, "when evidence of certain circumstances surrounding the arrest is wholly unrelated to the charged crime, the arrest is remote in time from the charged crime, *and* the evidence is not otherwise shown to be relevant, it should not be admitted, and thus, it is an abuse of the trial court's discretion to do so."[15]

---

[13] *Rucker v. State*, 291 Ga. 134, 137 (3) (728 SE2d 205) (2012) (citation omitted).

[14] *Nichols v. State*, 282 Ga. 401, 403 (2) (651 SE2d 15) (2007) (citation and punctuation omitted); see *Mims v. State*, 314 Ga. App. 170, 174 (2) (723 SE2d 486) (2012) (evidence is relevant if it tends to prove or to disprove a material fact at issue, and every act or circumstance which serves to explain or throw light upon a material issue is relevant).

[15] *Nichols*, supra (citations omitted; emphasis supplied).

We find no abuse of discretion in the trial court's allowing the evidence.[16] In accordance with the trial court's evidentiary proscription, the arresting officer gave no testimony linking Wright to any cocaine possession. And as the prosecutor posited, Wright's giving law enforcement a false name when arrested (four months) *after* the Thatcher incident allowed for a reasonable inference that Wright was attempting to elude capture therefor.[17] Thus, we find no merit in Wright's contention

---

[16] See *Brooks v., State*, 281 Ga. 514, 517 (3) (640 SE2d 280) (2007) ("The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases.") (citation omitted).

[17] See *Evans v. State*, 288 Ga. 571, 574-575 (5) (707 SE2d 353) (2011) ("Evidence as to whether a defendant tried to evade capture is admissible as evidence of flight," and "evidence of flight is relevant because a defendant's efforts to elude capture arguably provide circumstantial evidence of guilt.") (citations and punctuation omitted); *Woolfolk v. State*, 282 Ga. 139, 140 (2), n. 2 (644 SE2d 828) (2007) ("Flight is always a circumstance which may be shown and a jury is authorized to take into account in determining guilt or innocence of an accused, and evidence thereof is not inadmissible because it incidentally puts the defendant's character in issue.") (citation and punctuation omitted); see generally *Rucker*, supra at 136-137 (2) (finding trial court's admission of evidence was not an abuse of discretion, where circumstances of attempted flight "arguably" bore on material issue).

13

that the officer's testimony, which was limited as directed by the trial court,[18] amounted to impermissible, prejudicial character evidence.[19]

(c) Wright complains that the trial court allowed Thatcher to testify on direct examination about an irrelevant matter – the effects that the criminal incident had on his family life. But at trial, Wright made no objection to this testimony. And although Wright asserts that his subsequent motion for mistrial should have been granted, the cited motion – not made until two additional witnesses had given testimony – did not include the ground asserted here. Consequently, Wright's complaint provides nothing for this court to review.[20]

---

[18] *Scruggs v. State*, 273 Ga. 752, 753 (2) (545 SE2d 888) (2001) (finding that the testimony that appellant had been arrested was not prejudicial because there was no testimony that the arrest was for anything other than the charges for which appellant was on trial); *Keller v. State*, 231 Ga. App. 546 (4) (499 SE2d 713) (1998) (finding no abuse of discretion in the admission of defendant's fingerprint record, where record bore an arrest date that was *after* the date of the charged offense because such record did not necessarily imply that defendant was ever arrested for another offense); accord *Jackson v. State*, 284 Ga. 484, 486 (2) (668 SE2d 700) (2008) (noting that "evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence") (citations and punctuation omitted).

[19] *Evans*, supra; *Woolfolk*, supra; *Scruggs*, supra; *Williams*, supra; *Keller*, supra.

[20] See *Zamora v. State*, 291 Ga. 512, 514 (3) (731 SE2d 658) (2012) (appellant's challenge to admissibility of certain evidence was waived, where no trial objection to the admission of the evidence was made).

3. Wright contends that the trial court erred by allowing the prosecutor to make during closing argument irrelevant, prejudicial statements concerning matters not in evidence.

(a) Wright cites that, after summarizing the underlying incident as described by the state's witnesses, the prosecutor made a "future dangerousness" statement, as follows:

> . . . The only point where the defense and state, I guess, disagree is that they are saying that the third person there wasn't the defendant. And why are they saying that? . . . Because they have to . . . They have to come up with something because he doesn't want to take responsibility for this horrible crime that he has committed. Because the next time he does this, he might shoot somebody.

Wright's trial counsel interposed, "I think he is getting in the area of future dangers that he is not allowed to," and the court responded, "All right. Let's continue. Be careful, but let's continue."

On appeal, Wright asserts that the trial court's response fell short of satisfying OCGA § 17-8-75, which provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the

15

counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

It is improper for a prosecutor to argue to the jury during the guilt-innocence phase of a trial that if found not guilty, a defendant poses a threat of future dangerousness.[21] "The argument simply is irrelevant to the question of whether, under the facts introduced into evidence, the defendant is guilty beyond a reasonable doubt of the crime[s] charged."[22] Accordingly, the comment flagged here – "the next time he does this, he might shoot somebody" – was improper.[23]

However, even assuming that the trial court's response fell short of satisfying OCGA § 17-8-75,[24] we cannot agree with Wright that the trial court thereby committed reversible error. "[I]t is fundamental that harm as well as error must be

---

[21] *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997).

[22] Id. at 864-865 (2) (b) (footnote omitted).

[23] See id. (holding that remarks that if the jury returned a verdict of not guilty, appellant could "do it again," "get his gun back," and "ride down on the elevator [with the jurors] as they leave the courthouse" constituted improper "future dangerousness" comments).

[24] See *O'Neal v. State*, 288 Ga. 219, 220-222 (1) (702 SE2d 288) (2010) (concerning duties contemplated by OCGA § 17-8-75 for trial court).

16

shown for reversal."[25] The transcript shows that the trial court cautioned the prosecutor in connection with raising the specter of Wright's future dangerousness, and Wright does not cite any other instance of that type of remark. "Furthermore, the trial court charged the jury fully as to what constituted evidence, including instructing [the jury] that evidence did not include the attorneys' opening statements or closing arguments."[26] All things considered, including the strength of the state's evidence in this case, we conclude that it is highly probable that any error in failing to comply with OCGA § 17-8-85 based upon the single comment did not contribute to the verdicts.[27]

---

[25] Id. at 223 (2) (citations and punctuation omitted); see *Arrington v. State*, 286 Ga. 335, 345 (16) (a) (687 SE2d 438) (2009) (alleged error under OCGA § 17-8-75 "is subject to harmless error analysis").

[26] *Arrington*, supra at 346 (16) (a); see *O'Neal*, supra at 223 (2).

[27] See *O'Neal*, supra (finding no reversible error, when all things – including court's instruction that closing arguments of counsel did not constitute evidence and the strength of the state's evidence – were considered); *Arrington*, supra at 345-345 (16) (a) (finding harmless error in trial court's failure to adequately rebuke state and admonish jury in response to state's misstatement of evidence during closing argument, where improper statement consisted of one sentence, was interrupted by defense counsel's prompt objection, and trial court immediately observed that the "jury w[ould] remember the evidence," and where other inculpatory evidence rendered it highly probable that the error did not contribute to the guilty verdicts); *Wyatt*, supra at 865 (2) (b) ("Considering the overwhelming evidence of appellant's guilt, which included eyewitness testimony, it is highly unlikely that this single

(b) Wright contends that the trial court erred by allowing the prosecutor to make other comments that Wright claims were the prosecutor's personal opinions about the veracity of certain defense witnesses. But Wright's lawyer failed to lodge any objections thereto, and consequently failed to preserve this contention for purposes of appeal.[28]

4. Wright contends that the trial court erred by failing to charge the jury on robbery as a lesser included offense of the armed robbery charge. We disagree.

> The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.[29]

---

portion of the closing argument contributed to the guilty verdict.") (footnote omitted).

[28] *Johnson v. State*, 288 Ga. 803, 808 (5) (708 SE2d 331) (2011) (holding that failure to object to comments made during closing argument waived issue, and further declining to review issue under "plain error" analysis); *Moore v. State*, 288 Ga. 187, 191 (3) (702 SE2d 176) (2010) (concluding that whether the state made improper comments during closing argument was not preserved for appeal, where the defendant failed to object to the prosecutor's closing argument when made).

[29] *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994) (citation and emphasis omitted).

While Wright acknowledges eyewitness testimony by Thatcher and his (Wright's) cousin that he used a gun to take Thatcher's property, he argues that he nevertheless was entitled to a charge on robbery because: (a) the trial testimony given by his cousin's friend included no mention of a gun; (b) his cousin and her friend gave to police their "written statements which included no mention of a gun"; and (c) testimony by alibi witnesses placed him at home at the time of the charged crimes. Relying on *Smith v. State*,[30] Wright claims that "these inconsistencies would be enough to require the Court to give the charge on the lesser included offense of Robbery."

In *Smith*, where the defendant was charged with armed robbery, this court noted that "[the defendant] and [the victim] gave differing accounts of the circumstances surrounding the theft of the money."[31] The victim testified that, during the episode in question, the defendant threatened to harm her with a gun.[32] Notwithstanding, other evidence in *Smith* warranted a charge on the lesser included offense of theft by taking – specifically, the defendant's testimony that he saw a $10

---

[30] 244 Ga. App. 667 (536 SE2d 561) (2000).

[31] Id. at 668 (1).

[32] Id.

19

bill sticking out from under the victim's jewelry box and that he grabbed it on his way out the door, together with other evidence "show[ing] that [the victim] was not aware that [the defendant] took the $10 from her dresser."[33]

Wright claims that, like the trial witnesses in *Smith*, the witnesses at his trial gave differing accounts of the circumstances surrounding the theft of the victim's property. But unlike one of the differing accounts presented in *Smith* (that of the defendant), none of the evidentiary accounts cited by Wright warranted a jury charge on robbery as a lesser included offense of armed robbery. We consider them in turn.

(a) *Trial testimony by the friend of Wright's cousin.* The trial transcript shows that, after this witness recounted that Wright walked away from her and his cousin to approach Thatcher, the prosecutor asked her:

Q:     What did you see happen next?

A:     After that, me and [Wright's cousin] start walking like – like going up the hill. And I saw the man, Mr. Thatcher, running down the hill.

Q:     Running down that sidewalk?

A:     Yes.

Q:     And when he was running, how did he look to you.

---

[33] Id.

A:     Scared kind of.

Neither the prosecutor, nor defense counsel, asked this witness whether Wright had used a gun. And under reasoning set forth in *Smith v. State*,[34] this witness's account did not constitute evidence that he had not used a gun.

In *Smith*, the appellant, who was convicted of committing armed robbery (with a knife) at a convenience store, contended that the trial court erred by refusing to charge the jury on robbery by intimidation and theft by taking.[35] The evidentiary basis of his contention was that the tape retrieved from the store's video surveillance camera depicted the robber's hands empty and by his sides.[36] This evidence, the appellant argued, was sufficient to show that the robbery was committed without the use of a knife and possibly with the clerk's cooperation.[37] Concluding otherwise, this court reasoned,

> A review of the videotape reveals that the surveillance system recorded still shots, not motion, and cycled automatically through four different camera views. Therefore, *the videotape did not record the movements*

---

[34] 252 Ga. App. 552 (556 SE2d 826) (2001).

[35] Id.

[36] Id. at 553.

[37] Id.

*of the robber's hands during the entire incident*, raising the possibility that the surveillance system simply failed to capture the moment when Smith threatened the clerk with a knife. Further, although the robber's hands appeared open and down by his sides in many of the recorded frames, at times the robber can be seen putting his hands in his pockets, raising the possibility that he concealed the knife in his pocket after displaying it to the clerk. In short, the surveillance system's failure to clearly record an image of the robber threatening the clerk with a knife does not conflict with the clerk's testimony that the robber had a knife.[38]

Applying that rationale here, we conclude that this witness's spotty account of Thatcher's encounter with Wright did not contradict Thatcher's and Wright's cousin's testimony that Wright used a gun. While this witness gave no specific testimony about whether Wright used a gun, she did describe that Thatcher appeared frightened by his encounter with Wright and that he *ran* away from Wright. Indeed, "[t]here is no evidence, and the jury would have had no reason to believe, that [Thatcher] was persuaded to part with [his property] other than by having a [gun] pointed at him."[39] "The uncontradicted evidence thus showed completion of the greater offense [of

---

[38] Id. at 553-554 (citation omitted; emphasis supplied); see *Arnold v. State*, 238 Ga. App. 314, 315 (2) (518 SE2d 716) (1999).

[39] *Lightfoot v. State*, 227 Ga. App. 605, 607 (490 SE2d 177) (1997) (citation and punctuation omitted).

22

armed robbery] so that the charge on the lesser offense [of robbery] was not required."[40]

(b) *The girls' written police statements*. Defense counsel elicited from each girl on cross-examination that her respective written statement to police had not mentioned a gun. But neither police statement was introduced in evidence at trial, and the scant evidence concerning the content of either police statement did not show the completion of any specific offense.[41] Because we will not speculate on the content of either girl's written recitation,[42] we cannot conclude that either police statement

---

[40] *Clark v. State*, 279 Ga. 243, 246 (7) (611 SE2d 38) (2005) (citation and punctuation omitted).

[41] Specifically, Wright's cousin was asked, "Anywhere in this written statement do you mention a gun?" The girl said, "No." Later, she was asked, "So that in your statement you never mentioned a gun; correct?" She answered, "Yes." Specifically, the other girl was asked, "In that statement do you ever mention or claim that Mr. Wright or the perpetrator of this crime, whoever it is, had a gun in their hand?" She answered, "No, sir."

[42] See *Smith*, supra, 252 Ga. App. at 552-554 (refusing to speculate that the defendant did not use a knife to commit robbery, where the *evidence adduced* failed to account for the movement of the robber's hands during the entire incident). Cf. *Rogers v. State*, 289 Ga. 675, 676-677 (2) (715 SE2d 68) (2011) (concluding that the appellant, charged with the murder of victim by gunshot, was entitled to a jury charge on lesser included offense of involuntary manslaughter, where appellant's police statement recounted that he went to victim's residence for sole purpose of instigating a fist fight and that victim was killed unintentionally by an accidental discharge of victim's gun, and where appellant never admitted that he had a gun or any other kind

23

entitled Wright to a jury charge on robbery.[43] "Where, as here, *the evidence in the record* shows completion only of the greater offense[ ], it is unnecessary for the trial court to charge on the lesser offense[ ]."[44]

(c) *Alibi evidence*. Wright cites defense evidence that he was at home at the time in question. While that evidence, if believed, would have authorized the jury to conclude that Wright did not commit the charged offense of armed robbery, it did not authorize the jury to conclude that Wright committed the lesser included offense of robbery. "Where, as here, the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense."[45]

---

of deadly weapon); *Edwards*, supra at 132-133 (concluding that the appellant, charged with armed robbery at a residence, was entitled to a jury charge on lesser included offense of theft by taking, where appellant's police statement recounted that he had broken into the residence to steal drugs and money, but that the guns discovered at the residence by police were already at the residence when he arrived).

[43] See *Smith*, supra, 252 Ga. App. at 552-554.

[44] *Clark*, supra at 247 (7) (citation and punctuation omitted; emphasis supplied); *Smith*, supra, 252 Ga. App. at 552-554.

[45] *Mason v. State*, 267 Ga. 314, 315 (3) (477 SE2d 568) (1996) (citation and punctuation omitted).

Given the foregoing, Wright has failed to demonstrate any merit in his contention that he was entitled to a jury charge on robbery.

5. Wright contends that the trial court erred by rejecting his claim that he received ineffective assistance of trial counsel.

To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[46] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[47] Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact.[48] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo.[49] "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, it is not incumbent upon the reviewing court to examine the other prong."[50]

---

[46] 466 U. S. 668 (104 SC 2052, 80 LEd2d 674) (1984).

[47] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[48] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

[49] Id. at 88 (4).

[50] *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011) (citation omitted).

Wright claims that his lawyer should have objected to certain comments made during the state's closing argument.

> A closing argument is to be judged in the context in which it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument . . . ; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.[51]

At the hearing on Wright's motion for new trial, Wright's trial lawyer was asked why he had not objected to various statements made, and the lawyer testified that during the closing argument, the remarks had not seemed egregious.[52] "The

---

[51] *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) (citations omitted).

[52] *Spencer v. State*, 287 Ga. 434, 439-440 (4) (696 SE2d 617) (2010) (noting trial counsel's explanation for not objecting to closing argument included his "general rule" not to object during closing argument unless opposing counsel says "really something extremely over the top" so as to avoid getting objections during his own closing argument, and that trial counsel had not felt that the prosecutor's argument had risen to that level). Although Wright cites his trial attorney's testimony at the new trial hearing that, in retrospect, he believed that he should have objected to some of the remarks, "[i]t is of no moment that following trial, the attorney might regret the decision to remain silent, for effectiveness is not judged by hindsight or result." *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) (citation omitted); see *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (appellate court "will not use hindsight to second-guess" trial counsel's decision for not objecting to state's closing argument).

matter of when and how to raise objections is generally a matter of trial strategy."[53]

And there is a "strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct."[54]

(a) Wright complains that the following segment of the state's closing argument improperly urged the jury to consider how its verdicts might affect the community and to consider what message it would be sending to criminals if it allowed him to go free.

> If you are okay with innocent people getting victimized, if you are okay with people being afraid to take their children to a swim meet, if you are okay with people being afraid to walk on our city streets, find him not guilty. If you are okay with the defendant being able to come in here and bring these lies to you, deceive you, lie to the police so he can avoid prosecution for this, if you are okay with the fact that, in this county, three eyewitnesses can come in here and unequivocally identify the defendant as the person who committed this crime, you tell the citizens of this county that criminals that are in this county, that they can just come to court and tell a lie and to be found not guilty. You tell them that that's the kind of place this is. But if you don't want that to be this place,

---

[53] *Robinson*, supra (citation and punctuation omitted).

[54] *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002) (citation and punctuation omitted); see *Strickland*, supra at 689 (III) (A) (explaining that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance).

27

if you want them to know that this is your city, not theirs, you find him guilty. . . . You tell the defendant that this behavior and this unprovoked violence won't be tolerated in this community.

"[I]t is not improper for the state to appeal to the jury to convict for the safety of the community or to curb an epidemic of violence in the community. Nor is it improper for the prosecutor to emphasize to the jury its responsibility to enforce the law."[55] Given that statements akin to the ones complained of here have been held to

---

[55] *Clark v. State*, 285 Ga. App. 182, 184 (2) (645 SE2d 671) (2007) (footnotes omitted); see *McClain v. State*, 267 Ga. 378, 385 (4) (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished.").

be within the bounds of permissible argument,[56] Wright has failed to establish that his counsel performed deficiently for not objecting to this segment.

(b) Citing *Mathis v. State*,[57] Wright asserts that the prosecutor improperly injected his (Wright's) financial circumstances into the state's closing argument by stating: "It's not justice. It's not just to allow that person to sit around with no job to go out on the street and rob people."

But judging the two sentences in the context made, we conclude that the remarks reasonably stemmed from testimony that Wright had no job, typically slept

---

[56] See, e.g., *Spencer*, supra at 439 (4) (finding no deficient performance for not objecting to prosecutor's argument: "This is your community and these are your streets, and you can say yes to this or you can say no to this. . . . Say no to this on behalf of our community. Find the defendant guilty as charged based on the evidence."); *Gibson v. State*, 283 Ga. 377, 381 (8) (659 SE2d 372) (2008) (finding it permissible for prosecutors to tell jury that it had an "opportunity to define what is acceptable in [the] community" and to urge the jury to speak on the community's behalf and rid it of robbers and murderers); *Laney v. State*, 271 Ga. 194, 198 (10) (515 SE2d 610) (1999) (finding statement "this is your community" acceptable); *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993) (holding that it is not improper for a prosecutor to appeal to the jury to convict for the safety of the community or to convict so as to send a message to others that criminal activities will not go unpunished; the state may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard).

[57] 276 Ga. App. 587, n. 1 (623 SE2d 674) (2005) ("Evidence of the wealth or worldly circumstances of a party is never admissible, except in cases where position or wealth is necessarily involved.") (citation and punctuation omitted).

or stayed "in his bed laying around" until noon each day, wanted a vehicle, identified Thatcher's SUV as one he liked, and so took Thatcher's keys at gunpoint, and drove away in Thatcher's SUV. While motive was not an essential element of any of the charged crimes, the prosecutor was entitled to argue that Wright had a motive, as was developed in evidence; further, the prosecutor was entitled to impugn or condemn such motive.[58] Wright has failed to establish that his counsel performed deficiently for not objecting to the two sentences, and nothing in *Mathis* provides for a different result.

(c) Wright argues that the prosecutor improperly injected into the state's closing argument his personal beliefs about the veracity of the defense witnesses.

Wright flags a series of remarks. After recounting that certain of Wright's family members had sought to provide Wright with an alibi, the prosecutor stated, "They are making this up." The prosecutor added that Wright had called even "his poor mother" to "come up here and lie for him." Then the prosecutor reminded the

---

[58] *Head v. State*, 276 Ga. 131, 135 (6) (575 SE2d 883) (2003) ("In making a closing argument, it is counsel's right to impugn or condemn motives.") (citation and punctuation omitted); *Wade v. State*, 258 Ga. 324, 326-327 (5) (368 SE2d 482) (1988) (recognizing that motive for the charged crime was proper subject matter for closing argument); *Conner v. State*, 251 Ga. 113, 122 (6) (303 SE2d 266) (1983) (recognizing that counsel may "condemn motives, so far as they are developed in evidence").

30

jurors of the testimony by Wright's mother, his aunt, and another relative that, despite recalling that Wright was at home on the morning Thatcher was accosted, they admittedly did not go to police with information that might have cleared Wright of the charges. As the prosecutor put it during closing argument: "They never did that once. The first time this [alibi] information ever surfaced was when it was time for this case to come to court. And why? Because it's fabricated. It's not true."

"It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence."[59] Taken in context, the flagged remarks fall in the latter category, as the gravamen of this argument was to urge the jury to find from the circumstances that the alibi witnesses had lied.[60] And as language similar to that

---

[59] *Humphrey v. Lewis*, 291 Ga. 202, 215 (V) (A) (ii) (728 SE2d 603) (2012) (citation and punctuation omitted).

[60] See *Robinson*, supra (determining that, where complained-of statements by prosecutor were preceded by a lengthy list of inconsistencies presented by the witness's testimony, which brought witness's veracity into question, gravamen of argument was to urge jury to find from inconsistencies that the witness had lied); *Head*, supra ("In making a closing argument, it is counsel's right to . . . assail the credibility of witnesses by circumstances.") (punctuation and footnotes omitted). Compare *Bolden v. State*, 272 Ga. 1-2 (525 SE2d 690) (2000) (determining that the solicitor improperly commented on the credibility of the state's witness by stating, "You look at what you heard from the [state's witness], who I thought was very credible.").

31

employed here has been determined to fall within the bounds of permissible argument,[61] Wright has failed to establish that his counsel performed deficiently for not objecting to the flagged remarks.

(d) Finally, Wright claims that the prosecutor improperly made other comments that were not deductions from the evidence. After citing the testimony of Wright's cousin that Wright was the gunman who took Thatcher's property, the prosecutor went on to remind the jury that the girl had become upset while on the witness stand testifying against her cousin. The prosecutor added,

---

[61] See, e.g., *Robinson*, supra (finding no deficient performance for failing to object to prosecutor's argument: "that piece doesn't fit, because it's absolutely a lie. Not only is he a thief himself, but he's a liar, and he's lied to you today from the witness stand. His story about what happened just does absolutely not fit."); *Braithwaite*, supra at 887 (5) (finding that the prosecutor's remark during closing argument that "half the stuff out of [an accomplice's] mouth – I don't think he could tell the truth if he wanted to" – was a permissible comment on the inconsistencies shown among that witness's police statements, guilty plea, and trial testimony); *Emberson v. State*, 271 Ga. App. 773, 776 (3) (611 SE2d 83) (2005) (determining that prosecutor's references to defendant and other defense witnesses as "liars" who told "lies" were permissible, where record showed that prosecutor was arguing that the jury should conclude, based on the evidence and deductions therefrom, that the defendant and those witnesses were lying); *Newsome v. State*, 149 Ga. App. 415, 416 (3) (254 SE2d 381) (1979) (finding permissible the prosecutor's reference during closing argument to certain defense witnesses as "bald face liars," where the evidence authorized the jury to conclude that said witnesses were in fact untruthful).

32

She took the hard road. Don't let that be for nothing. What do you think she will think about doing the right thing in the future if you tell her you don't believe her? Do you think she will think it is worth doing the right thing again if you tell her, no, you are a liar? If you came up here, you were brave enough to come up here and tell the truth against your family, but, no, sorry. How do you think that would affect her for the rest of her life? It's just not right.

"[T]he wide range of discussion permitted in closing argument does have its limitations, the first and foremost of which is the longstanding prohibition against the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence."[62] This segment of the state's closing argument fell outside the wide permissible range.[63] However, even if we assume that defense counsel's decision not to object was not reasonable trial strategy,[64] but deficient performance, "that is not the

---

[62] *Bell v. State*, 263 Ga. 776, 777 (439 SE2d 480) (1994) (citations and punctuation omitted).

[63] See *Stroud v. State*, 284 Ga. App. 604, 616-617 (3) (h) (644 SE2d 467) (2007) (condemning prosecutor's inappropriate remarks to jury that returning a not guilty verdict would be tantamount to calling the testifying victims liars); *Hunt v. State*, 268 Ga. App. 568, 574-575 (5) (602 SE2d 312) (2004) (finding that it was inappropriate for prosecutor to tell jurors, "For you to go back in that jury room and return a verdict of not guilty means you must be prepared to come out and look those boys in the eye and call them liars; because that's what it does.") .

[64] See *Braithwaite*, supra at 886 (2) (instructing that an appellate court will not use hindsight to second-guess trial counsel's decision and that an appellate court's

end of the inquiry, for deficient performance, alone, does not amount to ineffective counsel. [Wright] must establish that counsel's inaction was so prejudicial to his defense that, but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different."[65] Wright has not made this showing.

Wright's principal defense was that he was not at the scene when Thatcher was accosted. However, not only did his cousin's testimony place him there perpetrating the crimes as charged, so did Thatcher's testimony. Additionally, Wright's cousin's friend testified that Wright approached Thatcher, and that afterward, Thatcher ran away in fright while Wright sped away in Thatcher's SUV. When police found Thatcher's SUV hours later, Thatcher's keys and cell phone – which had been taken from Thatcher by the armed bandit – were discovered inside the SUV. And one of the numbers dialed with Thatcher's cell phone since it had been taken from Thatcher was that of Wright's mother. Given the strength of the evidence against Wright, there is

---

task is "to determine whether, in the throes of closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument").

[65] *Lloyd v. State*, 280 Ga. 187, 192 (2) (d) (ii) (625 SE2d 771) (2006) (citations omitted); see *Miller v. Miller*, 285 Ga. 285, 286 (676 SE2d 173) (2009) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."), quoting *Strickland*, supra at 694.

no reasonable probability that the outcome of his trial would have been different had his trial counsel objected to the remarks.[66]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[66] *Stroud*, supra at 618 (3) (h) (concluding that trial counsel's failure to object was deficient performance, but prejudice prong was not satisfied, given overwhelming evidence against defendant); see *Braithwaite*, supra (concluding that failure to object did not prejudice defense, where evidence was overwhelming and defense counsel sought to mitigate any prejudice arising from argument); see generally *Hardeman v. State*, 281 Ga. 220, 222 (635 SE2d 698) (2006) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."), quoting *Strickland*, supra at 695 (III) (B).