A91A0470. SPIVEY v. THE STATE.
(407 SE2d 425)

CARLEY, Judge.

Appellant was tried before a jury and found guilty of selling cocaine. He appeals from the judgment of conviction and sentence entered by the trial court on the jury's guilty verdict.

At trial, the State relied upon the testimony of Randy Carter, a private citizen who had been working with police officials, to establish appellant's guilt. After the State rested, appellant called Brenda Ross as a defense witness. The initial question posed to Ms. Ross was whether she had "some conversations — two in particular . . . late last December with Randy Carter. . . .?" Ms. Ross declined to answer this question and invoked the Fifth Amendment. Appellant's counsel informed the trial court that the purpose of his questioning of Ms. Ross was not to have her incriminate herself but to have her recount conversations with Carter which were exculpatory of appellant and impeaching of Carter's trial testimony. The trial court neverthe-

less sustained Ms. Ross' invocation of the Fifth Amendment and it is this ruling that is the subject of appellant's enumerations of error.

"The appropriate course where, as here, a witness invokes his right to remain silent is as follows: First, the trial court must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the [witness]. [Cits.] On the other hand, where the trial court determines that the answers *could not* incriminate the witness, he must testify (or be subject to the court's sanction). [Cits.] It is for the court to decide if the danger of incrimination is ' "real and appreciable." ' [Cit.]" (Emphasis in original.) *Lawrence v. State*, 257 Ga. 423, 424 (3), fn. 3 (360 SE2d 716) (1987). We fail to see how it *could* incriminate Ms. Ross merely to answer questions about such conversations as she may have had with Carter regarding Carter's participation in the events leading up to appellant's arrest and prosecution. Such limited questioning would appear to be calculated to elicit only potentially relevant testimony exculpatory of appellant, rather than incriminatory of Ms. Ross. See *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). If, in his questioning of Ms. Ross, appellant's counsel did not pursue the relevant topic of Carter's conversations regarding appellant's guilt or innocence and strayed into an area which was potentially incriminatory of Ms. Ross herself, *then* it would be appropriate to allow Ms. Ross to determine whether her answer might be incriminating. "[T]he claim of privilege should be made when the question is asked and . . . it cannot operate as a general prohibition of inquiry[.] [Cits.] The privilege against self-incrimination cannot be asserted in advance of the questions actually propounded in the examination or hearing. [Cit.]" *Chastain v. State*, 113 Ga. App. 601, 602 (3) (149 SE2d 195) (1966). The record demonstrates that the trial court, in effect, erroneously allowed Ms. Ross to invoke the Fifth Amendment as a general prohibition of appellant's inquiry into the topic of her non-incriminatory conversations with Carter.

However, reversal of appellant's conviction would not be authorized unless the error was harmful. Ms. Ross had taped her conversations with Carter and appellant's counsel made a proffer of the transcripts of those taped conversations. We have reviewed those transcripts and find nothing therein that specifically relates to appellant's arrest and prosecution or that is materially impeaching of Carter's trial testimony and exculpatory of appellant. Carter's conversations appear to relate only to his participation in the arrest and prosecution of individuals *other* than appellant. "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." OCGA § 24-9-83. If, in his conversations with Ms. Ross, Carter made statements regarding his participation in *other* arrests and prosecutions, those

statements were certainly not inconsistent with or impeaching of his trial testimony regarding appellant's arrest and prosecution. Likewise, the specifics of Carter's statements to Ms. Ross regarding his participation in *other* arrests and prosecutions would not be admissible as impeaching evidence pursuant to OCGA § 24-9-84. "On direct examination of a witness for the purpose of impeaching another witness by proof of the latter's general bad character and reputation[,] the examination must be confined to the general character of the witness, and questions as to specific·acts are improper. [Cit.] "Particular transactions can not be inquired into to prove the bad character of a witness, except in cross-examination in seeking for the foundation and extent of the witness's knowledge.' [Cit.]" *Haynes v. Phillips*, 67 Ga. App. 574, 576 (1) (21 SE2d 261) (1942). Accordingly, even if the trial court had allowed appellant's counsel to ask Ms. Ross questions regarding her non-incriminating conversations with Carter, it is clear that she would not have been able to give answers which were relevant to any issue in the case. Thus, the trial court's error in allowing the invocation of Ms. Ross's Fifth Amendment privilege was harmless.

*Judgment affirmed. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I fully concur in the ruling that the court erred in prematurely allowing the witness' invocation of the privilege against self-incrimination. I also agree that the error was harmless, but I am persuaded by the facts that the transaction for which defendant was on trial was tape-recorded, the playing of the tape was admitted (without objection) and even replayed in part for the jury, and both parties to the dialogue testified so that the jury could compare their voices to those on the tape.

The taped informant's conversations with Brenda Ross, allegedly five months after the subject transaction, do not relate to this transaction but rather with one involving a person whose first or last name was Robert. The informant revealed to Brenda that he had lied at Robert's trial in that the drugs he testified he bought from Robert had in reality come from the police and not from Robert. The informant told Brenda that the reason he lied was to save himself from a false prosecution for car theft, which was threatened by the chief of police, the sheriff, and the district attorney, who wanted to imprison Robert. He said he was bothered by the lie and expected to tell the truth about it in court in February to get it off his chest. (The court proceeding was not identified; the trial in this case did not occur until June.)

There was no mention of the instant transaction or of defendant's name at all. Although the informant told Brenda that "Some of

them drugs they (the police) sent to the lab was their own drugs. I tell you the God's truth," no reasonable inference could be drawn that he was referring to the cocaine in this case, so as to make the evidence relevant.

In the conversation with Brenda, the informant admitted that he used drugs himself, and he apparently was smoking marijuana during the first conversation. He denied at trial that he ever used drugs or smoked marijuana or stole a car, but these were not material discrepancies relevant to the informant's testimony regarding the transaction in issue. See OCGA § 24-9-83; *Reynolds v. State*, 257 Ga. 725, 727 (5) (363 SE2d 249) (1988).

Since the excluded evidence would not have aided in establishing defendant's innocence or created a reasonable doubt of his guilt, its absence from the jury's consideration was harmless.

DECIDED JUNE 11, 1991 —
RECONSIDERATION DENIED JULY 2, 1991 — 

*Erion & Exum, Charles T. Erion,* for appellant.
*James L. Wiggins, District Attorney, H. Frederick Mullis, Jr., Assistant District Attorney,* for appellee.