### A94A2536. ROBINSON v. THE STATE.
(456 SE2d 68)

SMITH, Judge.

Larry Robinson was charged by accusation with stalking, OCGA § 16-5-90 (a), and two counts of making harassing telephone calls, OCGA § 16-11-39 (4). A jury found him guilty of stalking and one count of making harassing telephone calls; he was acquitted of the other count. His motion for new trial was denied.

1. Robinson first contends the evidence was insufficient to support his conviction for stalking. We do not agree.

OCGA § 16-5-90 (a) provides in pertinent part that "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

The evidence at trial showed that Kim Forbes had known Robinson for about two years and dated him for approximately one year before attempting to end the relationship. She testified that after she attempted to end the relationship, Robinson called her constantly, left a note on her car, left a threatening letter in her mailbox, rode by

her house, and threatened to write a disparaging letter to her supervisor at work. The letter was actually sent to Forbes and some friends but not to her supervisor. After Forbes swore out a warrant against Robinson for stalking, he followed her in his car for several miles. Forbes testified she feared for her life and was affected greatly by these actions. Although Robinson testified and undermined or contradicted some of this evidence, the jury was authorized to believe Forbes's testimony.

Contrary to Robinson's argument, the fact that the jury acquitted him of making harassing telephone calls to Forbes does not mean that they did not believe Forbes's testimony that he telephoned her constantly or consider that evidence in connection with the stalking charge. The statute prohibits " 'contact(ing) another person' " without consent for the purpose of harassment. "To 'contact' is readily understood by people of ordinary intelligence as meaning '(t)o get in touch with; communicate with.' " *Johnson v. State*, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994). The evidence was sufficient to authorize the jury to convict Robinson of stalking.

2. Robinson contends the trial court erred in refusing to compel Forbes to answer a question on cross-examination. Forbes was a financial officer at Georgia Baptist Hospital, and she, Robinson, and DeGay Fletcher had been involved in varying degrees in a scheme to steal money from the hospital. All had been arrested but not indicted on that matter at the time of the trial of this case. Forbes testified about the Georgia Baptist matter, but when asked on cross-examination what she had told police about Robinson in that investigation, she invoked her Fifth Amendment privilege against self-incrimination.

The defense objected and moved the court to instruct her to answer, claiming that forcing her to redisclose information she had already given the police could not further incriminate her. Robinson also contended that he believed this prosecution was being undertaken to establish a tactical advantage for Forbes and Fletcher in the Georgia Baptist case by undermining his credibility and trying to shift all blame for that crime on him. He argued that her answer would show Forbes's bias in that respect. The trial court refused to order Forbes to respond to the question, stating he could see the possibility of the answer being incriminating.

Regardless of Robinson's reason for asking the question, the appropriate course of action when a witness invokes the privilege against self-incrimination is for the trial court first to determine if the danger of self-incrimination is "real and appreciable." If so, the decision whether to invoke the privilege must be left to the witness. Only if the trial court determines the answer *could not* incriminate the witness must the witness testify. *Spivey v. State*, 200 Ga. App. 284, 285

(407 SE2d 425) (1991). That procedure appears to have been followed here.[1]

It is true, as argued by Robinson, that a witness's partiality may be exposed by proof that he hopes to benefit in a related case from cooperating with the prosecution in this case. *Kinsman v. State*, 259 Ga. 89, 91 (7) (b) (376 SE2d 845) (1989). It is equally true, however, that the privilege is not waived merely because the witness testified to the same matter at a previous trial. *Mallin v. Mallin*, 227 Ga. 833, 836 (3) (183 SE2d 377) (1971). At the time of this trial, no indictments had been returned in the Georgia Baptist matter. We have no verbatim transcript of the proceedings and thus have no knowledge of what Forbes's testimony regarding her statement to the police may have been. However, we must agree with the trial court that the possibility certainly existed that Forbes's testimony might incriminate her. Moreover, Robinson was free to argue his theory to the jury even without Forbes's answer to this particular question.

The greatest danger usually posed by a witness's assertion of the Fifth Amendment privilege from the stand lies in the possibility that the State will propound leading questions to the witness that will bring before the jury otherwise inadmissible matters. See *Lingerfelt v. State*, 235 Ga. 139 (218 SE2d 752) (1975). That danger was not presented here, because the question prompting Forbes's assertion of the privilege was propounded to the witness by the defense; the jury did not hear prejudicial matters as a result. Defense counsel did not request the trial court to instruct the jury regarding adverse inferences to be drawn from the invocation of the privilege, nor did he request that Forbes's remaining testimony regarding this matter be stricken. See generally *In the Interest of H. W. A.*, 182 Ga. App. 188, 189 (1) (354 SE2d 884) (1987) ("The true rule is that when a witness declines to answer on cross-examination certain pertinent questions relevant to a matter testified about by the witness on direct examination, all of the witness' testimony on the *same subject matter* should be stricken.") We find no error.

3. Robinson contends the State failed to prove venue at trial. No verbatim transcript exists in this case, and consequently we are unable to assess the accuracy of this contention. The State moved to supplement the transcript from recollection, and the trial court found that the "absence of findings about venue in the previous narrative transcript was not intended to be an indication that the issue was not proven by the State." The trial court was unable to recall what evidence was presented regarding venue, other than that the residences

---

[1] The trial was not reported. A transcript from recollection was prepared in narrative form, agreed to by the parties, and approved by the trial court as provided in OCGA § 5-6-41 (g).

of Forbes, Fletcher, and Robinson were all in DeKalb County, as was at least part of the route taken by Robinson when he followed Forbes. This enumeration consequently presents nothing for review. See *Huff v. State*, 207 Ga. App. 686, 687 (1) (428 SE2d 818) (1993).

*Judgment affirmed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED MARCH 10, 1995 —
RECONSIDERATION DENIED MARCH 23, 1995 — ■■■■■■■■■■

*Manning & Leipold, Calvin A. Leipold, Jr.*, for appellant.

*Ralph T. Bowden, Jr.*, Solicitor, *W. Cliff Howard, Shannon L. Goessling*, Assistant Solicitors, for appellee.